**Docket No. 13-16070**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

———————————•———————————

REALTEK SEMICONDUCTOR CORPORATION, a Taiwanese Corporation,

*Plaintiff-Appellee,*

v.

LSI CORPORATION, a Delaware Corporation
and AGERE SYSTEMS LLC,

*Defendants-Appellants.*

_____

*Appeal from a Decision of the United States District Court for the Northern District of California,
No. 5:12-cv-03451-RMW · Honorable Ronald M. Whyte*

# BRIEF OF APPELLANTS
## (REDACTED)

DAVID E. SIPIORA, ESQ.
MATTHEW C. HOLOHAN, ESQ.
KILPATRICK TOWNSEND & STOCKTON LLP
1400 Wewatta Street
Suite 600
Denver, Colorado 80202
(303) 571-4000 Telephone
(303) 571-4321 Facsimile

*Attorneys for Appellants,
LSI Corporation and Agere Systems LLC*

 

## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellant Agere Systems LLC is a wholly-owned subsidiary of Defendant-Appellant LSI Corporation.

Defendant-Appellant LSI Corporation is publicly held corporation.  No publicly held corporation owns more than a 10% interest in LSI Corporation.

DATED:  August 29, 2013                    Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By:    _s/  David E. Sipiora_
         DAVID E. SIPIORA
         MATTHEW C. HOLOHAN

Attorneys for DEFENDANTS-APPELLANTS LSI Corporation and Agere Systems LLC

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ....................................................................iv

I. JURISDICTIONAL STATEMENT ................................................1

II. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..................2

III. STATEMENT OF THE CASE ....................................................2

IV. STATEMENT OF FACTS ..........................................................5

    A. The Parties ....................................................................5

    B. LSI/Agere's Participation in WLAN Standard Setting and Commitments to the IEEE ................................................6

    C. Realtek's Infringement and Licensing Requests ....................7

    D. Realtek's Motion for Partial Summary Judgment and a Preliminary Injunction ....................................................9

    E. Essential Fact and Expert Discovery Was Not Complete When Realtek Filed Its Motion ................................................12

    F. The ITC Investigation ....................................................15

V. SUMMARY OF THE ARGUMENT ............................................15

VI. ARGUMENT ..........................................................................17

    A. Standard of Review ........................................................17

    B. Legal Standard for Preliminary Injunction ..........................17

    C. The District Court Erred In Enjoining Enforcement of an ITC Exclusion Order ..........................................................18

        1. Realtek is Unlikely to Succeed on the Merits of its Breach of Contract Claim ........................................................18

(a) The District Court Created a *Per Se* Rule that Has No Basis in the Facts or the Law............................................19

(b) The District Court's Finding of Likelihood of Success on the Merits Was Based on Clear Factual Errors. .............25

(c) The District Court's Finding of Likelihood of Success on the Merits Was Based on an Improper Summary Judgment Ruling.......................................................30

2. Realtek Cannot Show Irreparable Harm. .................................31

(a) Realtek's Unreasonable Delay in Seeking Injunctive Relief Precludes a Finding of Irreparable Harm. ...........31

(b) Realtek's Alleged Loss of Market Share Is Unsubstantiated and Compensable by Monetary Damages. ........................................................33

3. The Equities Weigh Against a Preliminary Injunction.............34

4. The Public Interest Will Not Be Served by an Injunction. .......36

**VII.** CONCLUSION.................................................................36

CERTIFICATE OF COMPLIANCE.................................................38

STATEMENT OF RELATED CASES ..............................................39

DECLARATION OF SERVICE ......................................................40

# TABLE OF AUTHORITIES

## CASES

*Apple, Inc. v. Motorola, Inc.*,
  869 F. Supp. 2d 901 (N.D. Ill 2012) ........................................................23, 26

*Apple, Inc. v. Motorola Mobility, Inc.*,
  Case No. 11-cv-178, 2012 WL 5416941 (W.D. Wisc. Oct. 29, 2012) .............24

*Fogerty v. Poor Boy Prods.*,
  124 F.3d 211, 1997 WL 579175 (9th Cir. 1997) ...............................................32

*Goldie's Bookstore v. Superior Ct.*,
  739 F.2d 466 (9th Cir.1984) .............................................................................33

*In re Certain Audiovisual Components & Prods. Containing the Same*,
  Inv. No. 337-TA-837, Notice of Initial Determination, 2013 WL 3831185
  (July 18, 2013) ...................................................................................................15

*International Ass'n of Plumbing & Mechanical Officials v. Int'l Conference
  of Building Officials*,
  79 F.3d 1153, 1996 WL 117447 (9th Cir. 1996) .........................................32, 33

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) ....................................................................passim

*Microsoft Corp. v. Motorola, Inc.*,
  No. C10-1823JLR, 2012 WL 5993202 (W.D. Wash. Nov. 30, 2012) .........22, 23

*Microsoft Corp. v. Motorola, Inc.*,
  No. C 10-1823JLR, 2013 WL 4053225 (W.D. Wash. Aug. 12, 2013)........20, 23

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*,
  762 F.2d 1374 (9th Cir.1985) ...........................................................................32

*Thomas v. Lewis*,
  105 F.3d 666, 1996 WL 742368,  (9th Cir. 1996).............................................34

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008)...............................................................................................17

**STATUTES**

28 U.S.C. § 1292(a)(1)................................................................1, 11

28 U.S.C. § 1332...........................................................................1

**OTHER AUTHORITIES**

Fed. R. App. P. 4(a)(1)(A) .............................................................1

Fed. R. Civ. P. 30(b)(6)................................................................12

Fed. R. Civ. P. 56(d) ...................................................................30

# I.    JURISDICTIONAL STATEMENT

The statutory basis of subject matter jurisdiction of the district court is 28 U.S.C. § 1332 because this is an action between citizens of different states and because Plaintiff-Appellee Realtek Semiconductor Corporation ("Realtek") asserts that the amount in controversy exceeds $75,000, exclusive of interest and costs.  (ER-0354, Complaint ¶ 14.)

The district court's order is a preliminary injunction and thus appealable under 28 U.S.C. § 1292(a)(1).  The district court issued an "interlocutory order" "granting [an] … injunction[]" against LSI.  (ER-00015, Order Granting Plaintiff Realtek Semiconductor Corporation's Motion for Partial Summary Judgment and Denying Defendants LSI Corporation and Agere Systems LLC's Motion to Stay ("PI Order") at 15.)  The basis for claiming that the district court's order is appealable is more fully set forth in the Opposition of Defendants-Appellants LSI Corporation and Agere Systems LLC (collectively, "LSI") to Realtek's Motion to Dismiss Appeal from Nonappealable Order (App. Docket. No. 8-1).

The district court's order is dated May 20, 2013.  On May 24, 2013, LSI timely filed its Notice of Appeal.  (ER-0019-20, Notice of Appeal.)  LSI's Notice of Appeal was timely pursuant to Fed. R. App. P. 4(a)(1)(A).

1

## II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1)    Did the district court err in granting Realtek's request for a preliminary injunction barring defendants from enforcing any exclusion order or injunctive relief by the International Trade Commission, where

a)    Realtek unreasonably delayed in seeking injunctive relief;

b)    Realtek's only alleged "irreparable harm," loss of market share, is unsubstantiated and compensable through monetary damages;

c)    The district court's determination that Realtek is likely to succeed on the merits is based on an improper summary judgment ruling of breach of contract based on a nonexistent contractual provision and a clearly erroneous assessment of Realtek's willingness to take a license to LSI's patents; and

d)    LSI may be denied the protection of U.S. import laws by allowing Realtek's infringing products to be imported into the United States.

## III.    STATEMENT OF THE CASE

This case arises out of an intellectual property dispute between LSI and Realtek.  LSI is the holder of several patents, including many valuable standard essential patents ("SEPs").  Realtek has been aware of LSI's patent portfolio,

including its SEPs, since at least October 22, 2002 when LSI Corporation's predecessor, Agere Systems LLC ("Agere"), wrote to Realtek suggesting that it take a license to Agere's wireless portfolio. (ER-0055-58, LSI's Opposition to Realtek's Motion for Partial Summary Judgment ("LSI Opp.") at 1-4.) In the District Court, Realtek conceded "for the purpose of [its summary judgment motion] that the [October 22] 2002 Letter contained an offer" to license LSI's SEPs. (ER-0180 n.2, Realtek's Motion for Partial Summary Judgment ("Realtek Motion") at 6, n. 2.) However, despite this offer and other attempts in 2002 and 2003 by Agere, LSI's predecessor, to engage in licensing discussions, Realtek refused to engage in licensing negotiations at that time.

The parties had no further contact until March 7, 2012, when LSI sent a cease and desist letter to Realtek asserting that Realtek's products infringe LSI's patents, including the U.S. Patent No. 6,452,958 ("the '958 patent") and U.S. Patent No. 6,707,867 ("the '867 patent"). (*See* ER-0351 *et seq.*, Complaint.) On March 12, 2012, LSI filed a complaint in the International Trade Commission ("ITC") alleging that Realtek and others infringe, *inter alia*, the '958 and '867 patents, and seeking a limited exclusion order barring Realtek from importing its infringing products. (*See id.*) Shortly after that, Realtek sent a letter to LSI requesting a reasonable and non-discriminatory ("RAND") licensing proposal, and Agere provided the requested proposal on June 20, 2012. (*See id.*)

Nine days later, on June 29, 2012, without responding to LSI's proposal or seeking to negotiate any of its terms, Realtek filed the underlying action alleging that LSI breached its RAND licensing obligations by (a) making an unreasonable offer in its June 20, 2012 proposal and (b) initiating the ITC action allegedly without ever having made a RAND license proposal to Realtek.  (*See id.*) Specifically, Realtek asserted causes of action for: (1) breach of contract, (2) promissory estoppel, (3) declaratory judgment that LSI must offer a RAND license to Realtek, and (4) unfair competition.  (*See id.*)  Among other relief, Realtek sought an order to enjoin LSI "from enforcing, or seeking to enforce, patent infringement claims in the ITC (or elsewhere) in breach of [LSI's] RAND obligations . . . ."  (*Id.*)

Nine months later, Realtek moved for summary judgment on its breach of contract claim and for an order enjoining LSI from enforcing any exclusion order or injunctive relief with respect to IEEE 802.11 standard-essential patents.  (ER-0194-95, Realtek Motion at 20-21.)  On May 20, 2013, the district court issued an order granting partial summary judgment in favor of Realtek and enjoining LSI from enforcing any exclusion order ultimately issued by the ITC against Realtek.  (ER-0015, PI Order at 15.)  LSI timely appealed and in this appeal challenges the propriety of the district court's entry of a preliminary injunction.

## IV.    STATEMENT OF FACTS

### A.    The Parties

LSI Corporation is a United States company based in California.  (ER-0353, Complaint ¶ 10.)  Agere Systems LLC is a wholly owned subsidiary of LSI that resulted from a reorganization of Lucent Technologies, Inc. ("Lucent") in 2000 and is based in Allentown, Pennsylvania.  (ER-0353-54, Complaint ¶¶ 10-13.)  Over the years, LSI Corporation through its subsidiaries and predecessor companies, such as Lucent and Agere,[1] developed and maintained a patent portfolio in the field of wireless computer networking.  (ER-0357-59, Complaint ¶¶ 29-36; ER-0347-48, Answer ¶¶ 29-36.)  LSI has also participated over the years in the development of IEEE's 802.11 standards for wireless networking.  (ER-0358, Complaint ¶ 34; ER-0368-71, Complaint Exh. A.)

Realtek is a Taiwanese company that supplies chips for wireless communication products that comply with the IEEE's WLAN standards.  (ER-0358, ER-0364-65, Complaint ¶¶ 8, 75.)  Realtek sells these chips to other companies that incorporate the chips into products that are imported into the U.S. (ER-0353, ER-0364-65, Complaint ¶ 8-9, 76; ER-0084, Deposition of Chiang-Ho Tsai at 79-80.)

---

[1] Unless otherwise noted, this brief will generally refer to Agere and LSI collectively as "LSI" for simplicity.

**B.    LSI/Agere's Participation in WLAN Standard Setting and Commitments to the IEEE**

Realtek's allegations against LSI relate to commitments made by Agere to the IEEE during its standards setting process for the WLAN standards.  During the standards setting process, an organization such as the IEEE will "encourage participants to include the best available technology in standards" and request that the participant agree to make RAND licenses available to any patents it owns that claim technology implemented in that standard.  (*See* ER-0318, U.S. Department of Justice & U.S. Patent & Trademark Office, Policy Statement on Remedies for Standards-Essential Patents Subject to Voluntary F/RAND Commitments ("Joint Policy Statement" at 5.)  The patent owner is compensated for such a commitment by the "expanded source of revenues" generated by licensing its patents to implementers on those RAND terms.  (*Id.*)

As part of the WLAN standard setting process, Agere stated with regard to both the '958 and '867 patents that it was "prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard" and that it would "make available on a non-exclusive basis, under reasonable terms and conditions that are non-discriminatory, licenses to patents and patent applications."  (ER-0368-71, Complaint, Exh. A (alteration in original).)  Neither

LSI nor Agere made any commitment to the IEEE that they would relinquish their rights to request an injunction or ITC exclusion order.  (*Id.*)

### C.    Realtek's Infringement and Licensing Requests

Realtek has been aware of LSI's patent portfolio since at least 2002 when LSI's predecessor, Agere, wrote to Realtek suggesting that it take a license to Agere's wireless portfolio and specifically identified the '958 Patent as representative of that portfolio.  (ER-0102-03 & ER-0111, Realtek Response to LSI Interrogatory Nos. 8 & 18; ER-0204-19, 2002/2003 Letters.)  On January 24, 2003, Realtek responded by letter stating that it would study the matter and "contact [Agere] upon completion of [Realtek's] studies."  (*Id.*)  Realtek also suggested that "if it was convenient for [Agere], please provide us with a detailed analysis between our products and those essential claims of Agere patents."  (*Id.*)  On February 5, 2003, Agere responded by letter and offered to arrange a conference call with LSI patent counsel to discuss relevant claims and assist in Realtek's analysis.  (*Id.*)  Realtek never responded.  On March 31, 2003, Agere sent another letter inquiring about Realtek's analysis (*Id.*), and again received no response.

In the years following the 2003 correspondence, Realtek claims that it relied upon LSI's commitments to the IEEE that required it to license on RAND terms, including its Letters of Assurance that specifically identify the '958 and '867

patents.  (ER-0359, Complaint ¶¶ 37-39; ER-0368-71, Complaint Exh. A.)  Despite

knowing Agere and LSI's willingness to make such RAND licenses available,

Realtek ignored LSI's patent rights.  (ER-0102-03 & ER-0111, ER-0147, Realtek

Response to LSI Interrogatory Nos. 8 & 18; Realtek's Response to the Amended

ITC Complaint, ITC Inv. No. 337-TA-837 at 25.)  On March 7, 2012, LSI sent a

letter asking Realtek to cease its infringement.  (ER-0221-22, 3/7/12 letter.)  On

March 12, 2012, LSI filed a complaint with the ITC regarding infringement by

Realtek and its customer, Funai, among others.  (ER-0224-93, ITC Complaint.)

On May 24, 2012, Realtek's counsel wrote to LSI "[i]n response to LSI's

letter of March 7, 2012," and requested that LSI provide its RAND terms for the

"patents Agere identified as essential to the IEEE 802.11g" standard.  (ER-0295,

5/24/12 letter.)  On June 20, 2012, LSI provided Realtek with a summary of its

licensing program and several suggested terms stating that ███████████████

███████████████████████████████████████████████████████████

███████████████████████ (ER-0297-310, 6/20/12 Proposal; ER-0154,

6/20/2012 Phillips Email to Baik.)  The proposal made clear that it ███████████

███████████████████████████████████████████ (ER-0298,

6/20/12 Proposal at 2.)  The proposal ended with a license structure for LSI's entire

WLAN portfolio.  (ER-0306-09, 6/20/12 Proposal at 10-13.)

LSI's June 20, 2012 proposal was not intended to be a final or non-negotiable offer.  As LSI's Vice President of Licensing noted, ███████

████████████████████████████████

████████████████████████████████

████████████████████████████████

(ER-0158, W. Waskiewicz Depo. at 87:2-11.)  As it has always maintained and as the law approves, LSI intended the proposal to be open for discussion purposes. (ER-0157, W. Waskiewicz Depo. at 52:4-11 (noting the proposal was ███████

████████████████████████).)

On June 29, 2012, without responding to LSI's initial proposal, Realtek filed the underlying suit arguing that the ITC Investigation and the June 20, 2012 proposal violated LSI's RAND obligations and was inherently unreasonable.  (ER-0360, Complaint ¶¶ 43-45.)  In the underlying action, Realtek has pending claims for breach of contract, promissory estoppel, and declaratory relief.

### D.    Realtek's Motion for Partial Summary Judgment and a Preliminary Injunction

On March 26, 2013, nine months after filing its complaint, Realtek filed a Motion for Partial Summary Judgment as to its breach of contract claim against LSI.  (ER-0382, Docket No. 66.)  In the same pleading, Realtek also moved for an order from the district court "barring [LSI] from enforcing, or seeking to enforce, an exclusion order or injunction as to all alleged 802.11 standard

9

essential patents pending a full RAND trial on the merits." (ER-0198, Realtek Motion at 24.) In seeking such relief, Realtek represented to the district court that without an injunction, Realtek faced "the immediate threat of real and irreparable harm if [LSI] obtain[s] an exclusion order before RAND issues are tried in this case." (ER-0195, Realtek Motion at 21.) Moreover, in arguing its motion for a preliminary injunction before the district court, counsel for Realtek specifically argued that Realtek was suffering immediate harm "right now" due to alleged concerns from Realtek customers over the possibilities of an exclusion order. (ER-0039, Hearing Transcript at 19:8-18 ("With regards to the balance of hardships here, if your honor decided not to issue an injunction, Realtek would suffer irreparable harm. They're suffering irreparable harm right now").).

On May 20, 2013, the district court granted Realtek's Motion and entered the PI Order. First, the district court properly construed Realtek's request for injunctive relief as a motion for preliminary injunction. (ER-0012 n.5, PI Order at 12, n.5.) Second, the district court held that the threat of the exclusion order "poses an imminent threat of customer and revenue loss." (ER-0012, PI Order at 12.) The district court concluded this section by stating that:

> Based on the foregoing, the court GRANTS Realtek's
> motion for a preliminary injunction enjoining defendants'
> from enforcing any exclusion order or injunctive relief by
> the ITC that they might obtain against Realtek with
> respect to the '958 and '867 declared standard essential
> patents. The preliminary injunction shall remain in effect

10

> until this court determines defendant's RAND obligations
> and defendants have complied therewith.

(ER-0014, PI Order. at 14.)  In the final section of the PI Order, the section styled

"ORDER," the district court stated it "GRANTS Realtek's request for a

preliminary injunction barring defendants from enforcing any exclusion order or

injunctive relief by the ITC, which shall remain in effect until this court has

determined defendants' RAND obligations and defendants have complied

therewith."  (*Id.*)

The district court also granted Realtek's motion for partial summary

judgment that LSI breached its RAND licensing obligations.  (*Id.*)  This holding

was based on the district court's conclusion that LSI committed a *per se* breach of

its license obligations by "seeking injunctive relief against Realtek before

offering Realtek a license."  (ER-0011, PI Order at 11.)  Notably, the district

court reached this conclusion despite Realtek's unambiguous admission that "for

the purpose of [its summary judgment motion] that the [October 22] 2002 Letter

contained an offer" to license LSI's standard essential patents.  (ER-0180 n.2,

Realtek Motion at 6 n. 2.)

On May 24, 2013, LSI timely filed its Notice of Appeal of the Court's grant

of preliminary injunction, pursuant to 28 U.S.C. § 1292(a)(1).  (ER-0019-20,

Notice of Appeal.)  On May 31, 2013, Realtek filed a Motion to Dismiss Appeal

from Nonappealable Order.  (Docket No. 6.)  On August 2, 2013, this Court denied

Realtek's Motion to Dismiss without prejudice.  (Docket No. 16.)

### E.    Essential Fact and Expert Discovery Was Not Complete When Realtek Filed Its Motion.

Realtek's Motion was premature.  At the time Realtek filed its motion, fact

discovery was in full swing and would not be completed until May 1, 2013.  (ER-

0332, Stipulation and Case Management Order at 1.)  LSI had not taken the

depositions of key Realtek witnesses regarding many of the factual allegations

raised in Realtek's Motion.  On February 26, 2013, LSI served on Realtek a Rule

30(b)(6) deposition notice including a list of 28 deposition topics.  (ER-0115-21,

Rule 30(b)(6) Deposition Notice.)  Since that date, LSI diligently pursued the

scheduling of those Rule 30(b)(6) depositions.  (ER-0075-77, Declaration of

Charles A. Pannell, III ("Pannell Decl.") ¶¶ 10-20.)  In early March 2013, Realtek

agreed to produce one witness to testify on five of the 28 topics on March 18, 2013

and a second witness to testify on one of the 28 topics during the week of April 15,

2013.  The first of those depositions was complete at the time of Realtek's Motion.

LSI continued to press Realtek to produce one or more additional witnesses to

testify on the remaining 22 Topics.  (ER-0076, Pannell Decl. ¶ 13-19.)  On March

28 and April 5, 2013, after LSI threatened to file a motion to compel, Realtek

finally offered two witnesses to testify on the remaining 22 deposition topics.  (ER-

0076-77, Pannell Decl. at ¶ 16-20.)  The earliest dates that Realtek reported that it

could produce those witnesses were April 16 and May 1, 2013.  (ER-0076-77, Pannell Decl. at ¶ 20.)  Some of the topics on which Realtek's witnesses were scheduled to testify on those dates included:

- Realtek's intellectual property licensing and negotiation practices.  (TOPIC 1)

- Realtek's agreements to license intellectual property rights that are subject to any commitment to license those rights on RAND terms.  (TOPIC 2)

- Realtek's communications and/or documents discussing RAND licenses or procedures for entering into or calculating RAND licenses.  (TOPIC 3)

- Actions taken by Realtek in response to its awareness of the Patents or LSI's claim that it owns patents essential to practice the Wi-Fi Standard.  (TOPIC 5)

- How and when Realtek learned of LSI's commitment to the IEEE to license the Patents on RAND terms.  (TOPIC 9)

- Actions taken by Realtek to evaluate the need for and secure a license to the Patents.  (TOPIC 10)

- Realtek's alleged reliance on LSI's letters of assurance to the IEEE.  (TOPIC 11)

- Realtek's development and sale of those products Realtek contends implement or will implement the Wi-Fi Standard and its reliance on LSI or Agere's alleged commitments to the IEEE in the development and sale of those products.  (TOPIC 15)

- The royalty rates or other consideration paid by Realtek for the licensing of, or use of, any patents essential to the Wi-Fi Standard, including the identification of any agreement, contract, or licensing establishing said royalty and the material provisions of those licenses. (TOPIC 16)

- The nature and scope of any license, agreement, or commitment made by Realtek regarding the licensing of any patent essential to the Wi-Fi Standard,

including but not limited to whether the license was exclusive, nonexclusive, and the duration and terms of such licenses.  (TOPIC 17)

- Realtek's willingness to accept a RAND rate determined by the court as the result of this litigation.  (TOPIC 20)

- The procedure for discussing, negotiating, or otherwise determining the terms and conditions of a license that is subject to RAND commitments, including how Realtek determines what constitutes an unreasonable or discriminatory offer.  (TOPIC 22)

- Realtek's actions taken, responses to and communications in regards to LSI's June 20, 2012 proposal to license patents to Realtek.  (TOPIC 23)

- The royalties paid by Realtek to license intellectual property rights that related to Realtek's products that comply with the Wi-Fi Standard.  (TOPIC 28)

(ER-0077-78, Pannell Decl. ¶ 21.)  Given the fact-intensive nature of Realtek's allegations concerning the reasonableness of LSI's license offers, discovery on all of these topics was needed before LSI could fully respond to the allegations and arguments made in Realtek's Motion.  (ER-0078, Pannell Decl. ¶ 22.)

At the time of the motion, expert discovery had not even started.  The PI Order was issued on May 20, and initial expert reports were not served until May 29, 2013, (following an extension from the district court) and expert depositions were completed on August 1, 2013.  (ER0017, Stipulation and Order to Amend Case Management Order at 1.)  As a result of the PI Order being issued prior to the exchange of initial expert reports, LSI's experts were unable to offer opinions that may have assisted the district court in deciding the motion.

14

### F.    The ITC Investigation

The ITC's investigation with respect to Realtek, among other respondents, pursuant to Section 337 of the Tariff Act of 1930 (the "ITC Investigation") is currently pending review by the Commission.  The Administrative Law Judge issued an Initial Determination ("ID") on July 18, 2013.  *In re Certain Audiovisual Components & Prods. Containing the Same*, Inv. No. 337-TA-837, Notice of Initial Determination, 2013 WL 3831185 (July 18, 2013).  The ID recommended that an exclusion order not be issued against Realtek based on noninfringement of the '958 and '867 patents.  *Id.*  The ID also rejected Realtek's invalidity and RAND defenses.  *Id.*  LSI has petitioned for review by the Commission as to the noninfringement findings, and Realtek has petitioned for review as to the RAND and invalidity defenses.  The target date for the full ITC Commission Opinion is December 9, 2013.  No exclusion order will be entered in the ITC Investigation until at least that time.

## V.    SUMMARY OF THE ARGUMENT

The district court's preliminary injunction is erroneous for several reasons. In particular, the district court committed legal error and clear errors of fact in concluding that Realtek had proven entitlement to a preliminary injunction.

*First*, the district court concluded that Realtek was likely to succeed on the merits because LSI had committed a *per se* breach of its RAND commitments by

allegedly seeking an exclusion order from the ITC without offering a license to Realtek. This holding was legally and factually erroneous. There is absolutely no contractual provision that prohibits LSI from seeking an ITC exclusion order against infringers of its patents. Thus, there can be no breach as a matter of law. Further, Realtek admitted that LSI had, in fact, made a licensing offer before filing its ITC complaint, and thus the district court's factual finding to the contrary was legally erroneous. Thus, not only did the district court err in granting summary judgment, but the district court erred in finding that Realtek is likely to succeed on its breach of contract claim.

*Second*, Realtek's unreasonable delay in seeking injunctive relief – nine months after filing its complaint – eviscerates any claim of immediate and irreparable harm that would be required for a preliminary injunction. This, alone, warrants vacatur.

*Third*, the very "irreparable harm" that Realtek complains of – loss of market share – is by definition compensable by monetary damages and thus not "irreparable." Because Realtek has utterly failed to demonstrate irreparable harm, the district court's injunction was legally erroneous.

*Fourth*, the balance of hardships fails to support an injunction. LSI has identified *no cognizable harm* that would be addressed by injunctive relief,

16

whereas the PI Order seeks to deprive LSI of the full protection of U.S. patent and import laws.

*Finally*, the district court's injunction is against the public interest because it weakens intellectual property protection based on non-existent contractual commitments.

Accordingly, LSI respectfully requests that this Court vacate the district court's preliminary injunction.

## VI.  ARGUMENT

### A.  Standard of Review

This Court reviews an anti-suit injunction for abuse of discretion.  *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012).  This Court "review[s] the district court's factual findings in connection with the injunction for clear error, and its legal interpretations de novo.  When a district court makes an error of law, it is an abuse of discretion."  *Id.* (citations and quotations omitted).

### B.  Legal Standard for Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

### C.    The District Court Erred In Enjoining Enforcement of an ITC Exclusion Order.

The district court erred in entering the preliminary injunction because Realtek failed to satisfy the requirements for injunctive relief.

### 1.    Realtek is Unlikely to Succeed on the Merits of its Breach of Contract Claim.

Realtek is unlikely to succeed on its breach of contract claim because Realtek can point to no contractual provision that LSI breached or could have breached.  The undisputed facts show that (1) LSI is obligated to make licenses available for its SEPs on RAND terms, and (2) LSI made license offers to Realtek on numerous occasions.  Realtek cannot even show that it is a third-party beneficiary to any contract signed by LSI, let alone that LSI breached any contractual provision.

Contrary to the facts, the district court held that LSI committed a *per se* breach of its RAND obligations by failing to offer a RAND license proposal to Realtek before filing an ITC complaint.  However, nothing in the IEEE rules bars LSI from seeking injunctive relief to enforce its patent rights against a recalcitrant infringer.  At the very least, numerous factual issues exist concerning the existence and extent of LSI's alleged implied promises, as well as the enforceability of those alleged promises by Realtek.  Thus, the district court erred not only in granting

summary judgment in favor of Realtek but in finding that Realtek is likely to succeed on its contract claim at all.

> **(a)    The District Court Created a *Per Se* Rule that Has No Basis in the Facts or the Law.**

The district court went beyond a "likelihood of success on the merits" analysis and instead prematurely granted summary judgment in favor of Realtek based on a *per se* rule that does not exist.  In doing so, the "only question" that the district court resolved in regards to Realtek's breach of contract claim is "whether defendants, by instigating an ITC Section 337 action naming Realtek as a respondent prior to offering a RAND license to Realtek, violated their contractual obligations to the IEEE and to Realtek to license their standard-essential patents under RAND terms."  (ER-0007, PI Order at 7.)  In answering this question in the affirmative, however, the district court invented a contractual provision and ignored the facts.

First, the district court cited no IEEE rule that would prohibit LSI from filing a complaint with the ITC, nor does any such rule exist.  The IEEE only requires that a patentee *make available a license*, not that it do so before seeking injunctive relief.  Indisputably, the IEEE places no restrictions on the timing and manner of license offers or negotiations.  Moreover, the undisputed record shows that LSI actually made a license available to Realtek on multiple occasions and thus satisfied the letter and spirit of the IEEE rules.  Realtek even *admitted* that a

license offer had been made before the commencement of the ITC proceeding, and thus the IEEE requirements had been satisfied according to the district court's own rationale.  (ER-0180 n.2, Realtek Motion at 6, n.2.)

The district court's *per se* breach of contract holding ignores these factual underpinnings.  In addition, because there are no RAND benchmarks or standards in the IEEE, compliance with RAND commitments is a matter of custom in the industry which is highly factual.  In other words, whether Agere's prior-in-time offer passed muster under RAND can only be determined relative to industry norms and/or the parties' prior conduct.  Such an inquiry should only be made by a jury and only on a full record.  *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, No. C 10-1823JLR, 2013 WL 4053225, at *7 (W.D. Wash. Aug. 12, 2013) (denying summary judgment and holding that the reasonableness of an opening licensing offer must be decided by the jury).  As explained below, the district court erred not only in inventing a contractual provision and ignoring stipulated facts, but in denying LSI's request for additional discovery.

The only authority that the district court cited for its conclusion as to Realtek's breach of contract claim is this Court's decision in *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012).  However, that case is inapplicable.  In *Microsoft*, the purported breach of contract was based on the *alleged unreasonableness of the RAND offer*.  (ER-0007, PI Order at 7 (citing

*Microsoft*, 696 F.3d at 878).)  The district court enjoined Motorola from enforcing any injunctive relief until the court ruled on the RAND issues.  (*Id.*)  In doing so, however, the district court denied summary judgment on the issue of whether Motorola's allegedly unreasonable offer letters were a *per se* breach of its RAND obligations.  (*Id.* at 8.)  Thus, no *per se* rule was announced in *Microsoft*.

Here, the district court interpreted IEEE provisions to prohibit LSI from seeking injunctive relief altogether absent a prior-in-time RAND license offer. *Microsoft* does not establish this legal proposition.  The *Microsoft* decision states, in *dicta*, that a promise not to seek injunctive relief is "arguably" "implicit" in the RAND commitment.  *Microsoft*, 696 F.3d at 884-85.  But nothing in *Microsoft* (a) amounts to a *per se* prohibition on seeking injunctive relief for an SEP or (b) dictates the precise timing of any RAND offer.  Indeed, the district court in *Microsoft* expressly declined to find *any per se* breach of contract by denying Microsoft's summary judgment motion.  *Microsoft* simply cannot be read for the proposition that any *per se* breach of RAND commitment could be proven.  Rather, a breach of RAND obligations, as with any contractual claim, must be decided on the facts of the case.

The additional passages quoted by the district court make clear that the *Microsoft* decision does not indicate a likelihood of success on the merits, let alone a *per se*  rule.

First, the district court quoted the following passage:

> "[T]he district court did not abuse its discretion in
> determining that Microsoft's contract-based claims,
> including its claim that the RAND commitment precludes
> injunctive relief, would, if decided in favor of Microsoft,
> determine the propriety of the enforcement by Motorola
> of the injunctive relief obtained in Germany."

(ER-0008, PI Order at 8 (quoting *Microsoft*, 696 F.3d at 885).) This passage

makes clear that no determination had yet been made as to whether the "claim that

the RAND commitment precludes injunctive relief" would be decided in favor of

Microsoft. Thus, this passage cannot support the *per se* rule applied by the district

court.

The district court then quoted the *Microsoft* decision's statement that "'even

if Motorola did not breach its contract, . . . injunctive relief against infringement is

arguably a remedy inconsistent with the licensing commitment.'" (ER-0008-09, PI

Order at 8-9 (quoting *Microsoft*, 696 F.3d at 885).) Again, this is pure *dicta* that

does not resolve the question of whether RAND commitments preclude injunctive

relief.

*Microsoft* is distinguishable for other reasons as well. Following this

Court's decision in *Microsoft*, the district court in that case dismissed Motorola's

claim for injunctive relief against Microsoft for Microsoft's infringement after

holding a multi-week trial to determine a RAND rate and after Microsoft

"committed to accept a license on RAND terms." *Microsoft Corp. v. Motorola,*

*Inc.*, No. C10-1823JLR, 2012 WL 5993202, at **5, 6 (W.D. Wash. Nov. 30, 2012). In other words, "the issue was not if, but when and under what terms, a license agreement would be established." *Id.* at *6. Injunctive relief for the patent holder was determined not to be available *only after the infringer agreed to take a license*, something Realtek has not done here.

Further still, the district court only dismissed injunctive relief "without prejudice" because:

> [t]he court's determination that injunctive relief is no longer available . . . is based on the specific circumstances and rulings that have developed in this litigation. *If, in the future, those circumstances change in a manner to warrant injunctive relief, Motorola may at that time seek such relief.*

*Id.* at *7 (emphasis added). Subsequently, the district court in *Microsoft* explicitly denied Microsoft's motion for summary judgment that Motorola's claim of injunctive relief violated its RAND commitments, because "[w]hether seeking injunctive relief for a SEP frustrates the purpose of the contract is based on the specific circumstances of the case." *Microsoft*, 2013 WL 4053225 at *8.

Similarly, in *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 914 (N.D. Ill. 2012), another case addressing SEPs, Judge Posner held that an injunction was not justified "*unless* Apple refuses to pay a royalty that meets the FRAND requirement" (emphasis added). Thus, multiple courts have found that the holder of an SEP may be entitled to injunctive relief if an infringer refuses to accept a

license.  The district court's holding here that LSI is categorically barred from seeking injunctive relief absent a prior-in-time RAND offer is legally erroneous.

Injunctive relief is part and parcel of the bundle of rights afforded by a United States patent, and such property rights are not surrendered lightly.  As at least one other court has noted in dismissing a RAND case, any relinquishment of a federal patent right (*e.g.*, the right to seek an injunction) by contract must be clear and unambiguous.  In yet another SEP case, *Apple, Inc. v. Motorola Mobility, Inc.*, Case No. 11-cv-178, 2012 WL 5416941, at *15 (W.D. Wisc. Oct. 29, 2012), Apple brought claims against Motorola that are similar to Realtek's claims here, namely, that Motorola breached its RAND contracts with SSOs (including the IEEE) by seeking injunctive relief.  The court held that "[t]here is no language in either the ETSI or IEEE contracts suggesting that Motorola and the standards-setting-organizations intended or agreed to prohibit Motorola from seeking injunctive relief."  *Id.*  The court therefore held that "Motorola did not breach its [RAND] contracts simply by requesting an injunction and exclusionary order in its patent infringement actions."  *Id.*

Here, the extent of LSI's IEEE commitment was to "make available" a RAND license to those seeking to implement the 802.11 Standard.  At no time has LSI ever relinquished its rights to an injunction or exclusion order based on its RAND commitments, and the facts here do not warrant such a ban.

24

The district court's application of the *Microsoft* case is thus deeply flawed. Nowhere in the *Microsoft* decision is any legal holding that an SEP holder may *never* seek injunctive relief, and this claim is belied by further proceedings in that case and other cases. Nonetheless, the district court held that LSI's alleged breach of its non-existent promise "is even more glaringly inconsistent with its RAND obligations" than Motorola's conduct. (ER-0009, PI Order at 9.) This outright denial of LSI's statutory patent rights is legal error and warrants vacatur. And because the district court identified no other basis to find a breach of contract, Realtek has not shown a likelihood of success on the merits. Rather, Realtek's sole theory of breach fails as a matter of law.

> **(b)** **The District Court's Finding of Likelihood of Success on the Merits Was Based on Clear Factual Errors.**

The district court's additional bases for finding that RAND commitments bar injunctive relief are also improper. First, contrary to the district court's analysis, LSI's promise to license on RAND terms does not indicate that monetary damages are adequate compensation for Realtek's infringement. (ER-0009-10, PI Order at 9-10.) Such monetary damages are not available from the ITC, and Realtek's refusal to pay licensing fees would justify injunctive relief.

The district court was also incorrect in asserting that "Realtek is harmed as a result of the breach because the pending threat of an exclusion order gives

defendants inherent bargaining power in any RAND licensing negotiation that may now take place." (ER-0010, PI Order at 10.) Any exclusion order would not relieve LSI of its obligation to license *to a willing licensee* on RAND terms. Rather, it would force Realtek to choose between *willingly* taking a license and *willingly* ceasing infringement. Indeed, the district court acknowledged below that, notwithstanding LSI's RAND obligations, "an injunction may be warranted where an accused infringer of a standard-essential patent outright refuses to accept a RAND license." (ER-0010, PI Order at 10.) *See also Apple*, 869 F. Supp. 2d at 913-914 (injunction against infringer appropriate if infringer "refuses to pay a royalty that meets the FRAND requirement"). To date, Realtek has been unwilling to negotiate a RAND license, choosing instead to infringe LSI's patents without compensation. An ITC exclusion order will prevent Realtek from continuing its infringement *unless Realtek accepts a license*.

The district court's basis for this statement lies not in the facts of this case but in reliance on the Joint Policy Statement by the U.S. Department of Justice and U.S. Patent & Trademark Office, as well as the Opening Remarks of Federal Trade Commission ("FTC") Chairman Jon Leibowits as Prepared for Delivery in *In the Matter of Motorola Mobility LLC, a limited liability company, and Google, Inc., a corporation* at 3, FTC File No. 121-0120 (Jan. 3, 2013) ("FTC's Opening

26

Remarks"). (ER-0010, PI Order at 10.) But these documents do not support the district court's conclusion.

The excerpt of the Joint Policy Statement cited by the district court states:

> A decision maker could conclude that the holder of a F/RAND-encumbered, standards-essential patent had attempted to use an exclusion order to pressure an implementer of a standard to accept more onerous licensing terms than the patent holder would be entitled to receive consistent with the F/RAND commitment—in essence concluding that the patent holder had sought to reclaim some of its enhanced market power . . . .

(ER-0319, Joint Policy Statement at 6.) But this speculative statement relates to hypothetical situations *that have already occurred*. The Joint Policy Statement's recognition that a patent holder *may* pressure a licensee to accept unreasonable licensing terms does not indicate that LSI *will* do so here. Again, LSI *is bound by its RAND commitments* regardless of any exclusion order.

The portion of the FTC's Opening Remarks cited by the district court is likewise inapplicable:

> [C]ommitments to make patents available on reasonable terms matter, and . . . companies cannot make those commitments when it suits them—that is, to have their patents included in a standard and then behave opportunistically later, once the standard is in place and those relying on it are vulnerable to extortion.

(ER-0327, FTC's Opening Remarks at 3.) There is absolutely no evidence in the record below of "opportunistic[]" behavior or "extortion" on the part of LSI.

These inflammatory remarks have no bearing on this case.  LSI has abided and will continue to abide by its RAND commitments.  Realtek cannot flatly refuse to accept *any* licenses to LSI's patents and then prevent LSI from enforcing its patent rights.

The district court thus relied on hypothetical and irrelevant statements from public officials rather than the facts of this case.  Compounding its error, the district court incorrectly found that Realtek is a willing licensee (ER-0010, PI Order at 10) and that LSI filed its ITC complaint before offering a license to Realtek (ER-0011, PI Order at 11).  Both assertions are flatly contradicted by the undisputed record.

*First*, Realtek is not a willing licensee.  Realtek refused to negotiate in the context of LSI's 2002-2003 correspondence.  More recently, Realtek has refused to accept a license until its attempts to litigate the patents are exhausted, which is tantamount to outright refusal.  Indeed, Realtek has refused to license the patents in suit unless or until the ITC Investigation is complete, thus mandating the very ITC Investigation of which it complains:



(ER-0168, Realtek's Amended Response to LSI's Request for Admission No. 1.)

In other words, Realtek is a "willing licensee" only if it is dragged kicking and screaming through an infringement trial, a tribunal determines that LSI did not commit a RAND violation, and Realtek has exhausted its appellate rights. Realtek's tactic of forcing a patent holder to litigate in order to vindicate its patent rights is anathema to accepting a license. Such a position is anything but "willing" and, as the DOJ and PTO have recognized, may necessitate exclusion orders or threats of injunction. (*See* ER-0320, Joint Policy Statement at 7 n.15; ER-0323, Joint Policy Statement at 10.) Despite these facts, the district court misstated Realtek's willingness to take a license by erroneously declaring that "there is no indication that Realtek is *not* willing to accept a RAND license." (ER-0010, PI Order at 10 (emphasis in original).) This was clear error.

*Second*, LSI unquestionably offered Realtek a license before naming Realtek as a respondent in its ITC complaint. LSI's 2002-2003 communications sought to negotiate a license with Realtek nearly *ten years* before the ITC complaint was filed. Realtek expressly admitted that these communications manifested a license offer. (ER-0180 n.2, Realtek Motion at 6, n.2.) Nonetheless, the district court found that "Defendants make no meaningful argument that they offered a RAND

license to Realtek prior to naming Realtek in the ITC action." (ER-0011, PI Order

at 11.) The district court's inapposite factual finding was clear error.[2]

> **(c)    The District Court's Finding of Likelihood of Success on the Merits Was Based on an Improper Summary Judgment Ruling.**

In addition to the clear factual errors discussed above, the district court

ignored material factual disputes that preclude summary judgment of breach. First,

there is at least a triable issue of fact as to whether LSI's 2002-2003

correspondence constituted license offers. Realtek has admitted that these were

licensing proposals, and yet the district court summarily found that LSI had never

offered Realtek a license.

In addition, the district court improperly denied LSI's request for a

continuance of Realtek's motion pursuant to Rule 56(d). As detailed in Section

V.E, *supra*, significant, material discovery was pending when Realtek filed its

motion. By entering summary judgment without allowing LSI the opportunity to

complete the factual record and leveraging this summary judgment ruling into a

preliminary injunction, the district court committed legal error.

---

[2] The district court also found that LSI is "hypocritical" because LSI argued against injunctive relief for specific SEPs in a prior ITC investigation. (ER-009 n.4, PI Order at 9 n.4.) But LSI's prior legal arguments directed at the facts of a particular case cannot support the *per se* rule that the district court imposed here.

In sum, the district court made no competent findings concerning likelihood of success on the merits, instead inventing a *per se* rule by misapplying this Court's precedent and misapprehending the facts of the case. The uncontested facts show that LSI did make licensing offers to Realtek in full satisfaction of its RAND commitments, and thus Realtek will be unable to prove its breach of contract claim. This factor therefore weighs squarely against injunctive relief, and the district court's erroneous holding to the contrary warrants vacatur.

### 2. Realtek Cannot Show Irreparable Harm.

The district court's finding of irreparable harm is erroneous for two independent reasons. First, the nine-month delay between the filing of the underlying complaint and Realtek's motion is manifestly unreasonable and bars a finding of irreparable harm. Second, the only harm Realtek has identified – a speculative loss of market share – has been recognized by this Court as compensable by monetary damages.

### (a) Realtek's Unreasonable Delay in Seeking Injunctive Relief Precludes a Finding of Irreparable Harm.

The district court held that "Realtek has shown that the threat of an exclusion order has harmed its reputation and poses an imminent threat of customer and revenue loss." (ER-0012, PI Order at 12.) But this "imminent threat" has been readily apparent to Realtek since it filed this action in June 2012. Realtek could have filed a motion seeking to enjoin LSI immediately upon the

31

filing of this action.  Realtek chose not to do so and, instead, filed its motion *nine*

*months later* on March 26, 2013.  (ER-0382, Docket No. 66.)

Realtek's strategy in the timing of its motion is clear.  The trial in the ITC

began on April 2, 2013, less than one week after Realtek filed its motion.  Realtek

clearly intended to prejudice LSI's ability both to engage in the ITC trial and

respond to Realtek's motion by forcing LSI to address both matters at once.  This

behavior should not be countenanced.

Such delay is not only gamesmanship, but fatally contradicts Realtek's claim

that it faces irreparable harm.  As this Court has held, a "long delay before seeking

a preliminary injunction implies a lack of urgency and irreparable harm."  *Oakland*

*Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985)

(affirming the denial of a preliminary injunction).  For example, in *International*

*Ass'n of Plumbing & Mechanical Officials v. Int'l Conference of Building*

*Officials*, 79 F.3d 1153, 1996 WL 117447 (9th Cir. 1996) (Unpublished Table

Decision), this Court found that the district court erred in concluding that a

plaintiff had demonstrated irreparable injury where there was a seven-month delay

between filing the complaint and seeking injunctive relief.  Here, Realtek waited

*nine months*, and thus clearly cannot demonstrate irreparable harm.  *See also*

*Fogerty v. Poor Boy Prods.*, 124 F.3d 211, 1997 WL 579175, *3 (9th Cir. 1997)

(Unpublished Table Decision). This delay alone defeats any showing of irreparable harm.

**(b)    Realtek's Alleged Loss of Market Share Is Unsubstantiated and Compensable by Monetary Damages.**

In addition to its delay, Realtek has failed to even assert a type of harm that would be considered irreparable. The only alleged irreparable harm that the district court cites is "customer and revenue loss." (ER-0012, PI Order at 12.) But "*revenue* loss" by definition can be compensated through monetary damages (*i.e.*, the replacement of lost revenue) and thus is not "irreparable" as a matter of law. For example, in *International Ass'n of Plumbing & Mechanical Officials*, 79 F.3d 1153 at *2, this Court rejected a claim of irreparable harm based on "a loss of market share" because "such a loss may usually be remedied with monetary damages."

The district court made a legal error in recognizing loss of revenue as irreparable harm, but the district court's factual findings in this regard were also clearly erroneous. First, Realtek's evidence of the danger of lost customers is exceedingly thin and cannot support injunctive relief. The only evidence Realtek cited is ███████████████████████, which is speculative hearsay. (ER-0185, Realtek Motion at 11.) "Speculative injury does not constitute irreparable injury." *Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir.1984); *see*

*also Thomas v. Lewis*, 105 F.3d 666, 1996 WL 742368, at *1 (9th Cir. 1996)

(Unpublished Table Decision) (holding that speculative harm "cannot support a

claim for injunctive relief").  Thus, even assuming that loss of market share could

constitute irreparable harm, Realtek has failed to substantiate its claim of lost

market share.

Second, the district court inexplicably stated that LSI does not dispute

Realtek's claim of irreparable harm in the event of an ITC exclusion order.  (ER-

0013, PI Order at 13.)  However, LSI did dispute Realtek's claim of irreparable

harm.  (ER-0064, LSI Opp. at 10.)  In particular, LSI asserted that Realtek's

alleged harm is "speculative" and that Realtek had identified "no relevant harm"

that could be redressed by the district court.  (*Id.*)

The district court's finding of irreparable harm is based on a legally

erroneous conclusion compounded by factual errors.  The PI Order should be

vacated.

### 3.    The Equities Weigh Against a Preliminary Injunction.

The district court held that the equities weigh in favor of an injunction

because

> [i]f Realtek's products practicing the 802.11 standard
> were to be excluded from the United States, Realtek
> would either (1) lose its customers who sell, use, or
> import Realtek's component parts into the United States,
> or (2) be forced to negotiate a license in the

34

> disadvantaged position of having an exclusion order
> hanging over its head.

(ER-0013, PI Order at 13.)  Neither factor supports an injunction.

As to Realtek's lost customers, the evidence in that regard is legally insufficient to support injunctive relief as discussed in Section VII.C.2.(b), *supra*. As to the negotiation of a license in a disadvantaged position, LSI will still be obligated to negotiate a license on RAND terms, as discussed in Section VII.C.1, *supra*.  As discussed above, Realtek has explicitly declared that it *will not take a license* unless and until it is found to infringe by the ITC.  To the extent Realtek wishes to avoid the "disadvantaged position" of being subject to an exclusion order, Realtek can negotiate with LSI and accept a license on reasonable terms. Any disadvantage in this regard is purely of Realtek's own design.

While Realtek would suffer no inequity from the dissolution of the PI Order, the PI Order unduly prejudices LSI.  In particular, the district court's baseless declaration that LSI is categorically barred from seeking injunctive relief for the '958 and '867 Patents will impact LSI's ability to enforce its rights in these patents against other infringers.  The equities favor allowing LSI to enforce its legal rights to their fullest extent.  Accordingly, the district court erred in finding that this factor weighs in favor of a preliminary injunction.

### 4. The Public Interest Will Not Be Served by an Injunction.

The district court held that "the preliminary injunction serves the public interest by 'mak[ing] clear that commitments to make patents available on reasonable terms matter.'"  (ER-0013, PI Order at 13 (quoting ER-0327, FTC's Opening Remarks at 3).)  However, this is based on the faulty premise that RAND commitments bar injunctive relief, which is incorrect as discussed above.  In any case, the district court's preliminary injunction does not even serve this purpose, as LSI's commitment to make patents available on reasonable terms is borne out by LSI's ongoing willingness to license its patents to Realtek on reasonable terms.  Again, it is Realtek, not LSI, who has refused to negotiate in good faith.

Contrary to the district court's holding, the public interest is *harmed* by the district court's injunction because an independent government agency may be inhibited in its ability to enforce U.S. laws against unlawful importation.  Further, the public's interest in intellectual property rights will be harmed by a judicial declaration that such rights cannot be fully enforced.  Accordingly, the district court erred in holding that the public interest supports a preliminary injunction.

## VII.  CONCLUSION

The district court grossly overreached in issuing the PI Order.  The district court entered a preliminary injunction based on a litany of legal errors and clear

factual misapprehensions.  For the foregoing reasons, LSI respectfully requests that

this Court VACATE the PI Order.

DATED:  August 29, 2013                Respectfully submitted,

                                       KILPATRICK TOWNSEND &
                                       STOCKTON LLP

                                       By:    *s/  David E. Sipiora*
                                       _____
                                              DAVID E. SIPIORA
                                              MATTHEW C. HOLOHAN

                                       Attorneys for DEFENDANTS-
                                       APPELLANTS LSI Corporation and
                                       Agere Systems LLC

**Form 6.    Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains 8,168 _____ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* Microsoft Word Version 14.0.6134.5000 *(state font size and name of type style)* 14 point Times New Roman _____ , *or*

☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)* _____

_____

Signature    s/ David E. Sipiora

Attorney for | LSI Corporation & Agere Systems LLC

Date | August 29, 2013

## STATEMENT OF RELATED CASES

No other cases in this Court are deemed related.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/        Kirstin Largent