**Docket No. 13-16070**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

REALTEK SEMICONDUCTOR CORPORATION, a Taiwanese Corporation,

*Plaintiff-Appellee,*

v.

LSI CORPORATION, a Delaware Corporation
and AGERE SYSTEMS LLC,

*Defendants-Appellants.*

*Appeal from a Decision of the United States District Court for the Northern District of California,*
*No. 5:12-cv-03451-RMW · Honorable Ronald M. Whyte*

# REPLY BRIEF OF APPELLANTS

## (REDACTED)

DAVID E. SIPIORA, ESQ.
MATTHEW C. HOLOHAN, ESQ.
KILPATRICK TOWNSEND & STOCKTON LLP
1400 Wewatta Street
Suite 600
Denver, Colorado 80202
(303) 571-4000 Telephone
(303) 571-4321 Facsimile

*Attorneys for Appellants,*
*LSI Corporation and Agere Systems LLC*

 

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I.    INTRODUCTION .......................................................................................1

II.   RESPONSE TO REALTEK'S STATEMENT OF FACTS AND
      PROCEDURAL HISTORY ........................................................................1

III.  ARGUMENT ..............................................................................................6

      A.    Realtek Cannot Assert that the Injunction Is Proper *and*
            that this Court Lacks Jurisdiction ...................................................6

      B.    The District Court Erred in Granting the Preliminary Injunction .......12

            1.    Realtek Cannot Show Likelihood of Success on the Merits ....12

                  (a)    The District Court Invented a *Per Se* Rule ....................12

                  (b)    The District Court Improperly Resolved Factual
                         Disputes in Realtek's Favor ............................................18

                  (c)    The District Court Improperly Ruled Before Key
                         Discovery Was Completed And Made of Record .........20

            2.    Realtek's Claim of Irreparable Harm Was Untimely
                  and Not Legally Cognizable ....................................................22

                  (a)    Realtek Waited Too Long to Seek Injunctive Relief .....22

                  (b)    The Only "Harm" Identified by Realtek Is
                         Purely Economic and Thus Not Irreparable
                         as a Matter of Law. ........................................................25

            3.    The Balance of Equities and Public Interest Fail to
                  Support Injunctive Relief. ........................................................26

IV.   CONCLUSION.............................................................................................29

CERTIFICATE OF COMPLIANCE.......................................................................30

DECLARATION OF SERVICE

# TABLE OF AUTHORITIES

**CASES**

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ............................................................24

*Apple, Inc. v. Motorola Mobility, Inc.*,
   Case No. 11-cv-178, 2012 WL 5416941 (W.D. Wisc. Oct. 29, 2012) .............16

*International Ass'n of Plumbing & Mechanical Officials v. Int'l Conference
   of Building Officials*,
   79 F.3d 1153, 1996 WL 117447 (9th Cir. 1996)...............................................22

*Jamie S. v. Milwaukee Public Schools*,
   668 F.3d 481 (7th Cir. 2012) ............................................................11

*Microsoft Corp. v. Motorola, Inc.*,
   696 F.3d 872 (9th Cir. 2012) ............................................................14, 15, 16

*Microsoft Corp. v. Motorola, Inc.*,
   No. C10-1823JLR, 2012 WL 5993202 (W.D. Wash. Nov. 30, 2012)..............15

*Orange County v. Hongkong & Shanghai Banking Corp.*,
   52 F.3d 821 (9th Cir. 1995) ............................................................6, 7

*Pit River Tribe v. United States Forest Service*,
   615 F.3d 1069 (9th Cir. 2010) ............................................................9

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 1991) ............................................................25

*United States v. Associated Air Transport, Inc.*,
   256 F.2d 857 (5th Cir. 1958) ............................................................10

*Warehouse Restaurant, Inc. v. Customs House Restaurant, Inc.*,
   726 F.2d 480 (9th Cir. 1984) ............................................................10

**STATUTES**

28 U.S.C. § 1292(a)(1)............................................................6

## I.    INTRODUCTION

Realtek Semiconductor Corporation ("Realtek") has not refuted the showing in LSI Corporation and Agere Systems LLC's (collectively, "LSI") Opening Brief that the district court gravely erred in enjoining LSI from enforcing its property rights against a recalcitrant infringer.  Further, the district court's order ("PI Order") places immediate, material restrictions on LSI and is appealable to this Court.  As discussed below and in LSI's Opening Brief, the district court's holding as to injunctive relief was based on (1) a brand new *per se* rule based on nonexistent contractual terms; (2) alleged "irreparable harm" to Realtek that is purely economic and was not timely raised; (3) a faulty balancing of equities that ignored the harm to LSI; and (4) public policy concerns that have no basis in fact or law.  This Court should vacate the PI Order.

## II.    RESPONSE TO REALTEK'S STATEMENT OF FACTS AND PROCEDURAL HISTORY

Realtek's statement of facts and procedural history includes several misstatements and arguments unsupported by the record.

First, Realtek incorrectly contends that Agere "ignored" a 2003 request from Realtek to provide a detailed analysis comparing Agere's patent claims to Realtek's products.  (Realtek Br. at 17-18.[1])  On January 24, 2003, Realtek asked

---

[1] Citations to Realtek's Brief refer to the confidential version.

1

Agere to provide ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ (ER-215.) Agere did not, as Realtek alleges,

ignore this request. Instead, on February 5, 2003, Agere faxed a letter to Realtek

that ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ (ER-217.) The record reflects not a single

response from Realtek to this offer of a meeting to discuss Agere's analysis, even

after Agere followed up on March 31, 2003. (ER-219.) Thus, Agere sought to

provide Realtek with the information it requested, but Realtek ignored all such

overtures from Agere.

Second, Realtek alleges that it is "undisputed" that LSI was obligated to

offer a license on RAND terms with respect to the '958 and '867 Patents at the

time of the March 7, 2012 cease-and-desist letter and that "the failure to do so was

inherently 'unreasonable'." (Realtek Br. at 18.) Of course, this is disputed and it

is not a fact. As of March 2012, LSI already had offered Realtek a RAND license

in October 2002 and had received no substantive response. As of March 2012,

Realtek had been infringing for a decade without any effort to respond to LSI's

license offer. No authority or logic supports Realtek's bald assertion that a duty

arose at that point for LSI to offer Realtek anything. Which party was "reasonable" at that time properly is the subject for a jury determination, not the district court in granting summary judgment and certainly not an "inherent" fact as claimed by Realtek.[2]

Third, Realtek backtracks on its clear statement in the record that Agere's 2002/2003 correspondence constituted an offer of a license. Realtek characterizes the 2002/2003 correspondence as merely "initial license communications." (Realtek Br. at 17, at 20.) Realtek, however, ████████████████████ ████████████████████ (ER-180, n.2 ████████████ ████████████████████).) While the parties disagree as to whether the 2002/2003 correspondence discharged LSI's RAND obligations with respect to Realtek, there can be no legitimate dispute that the 2002/2003 correspondence was an offer to license Agere's standard essential patents for the wireless standard in existence at that time. (SER-176.)

Fourth, with respect to the June 20, 2012, proposal from LSI to Realtek, Realtek now claims that it only requested ████████████████████.

---

[2] Realtek cites testimony of LSI in-house counsel, Ryan Phillips, supposedly in support of its allegation. In fact, Mr. Phillips testified ████████████ ████████████████████ (SER-120-21.) LSI provided Realtek with RAND proposals on October 22, 2002, and again on June 20, 2012. (ER-297-310.)

(Realtek Br. at 20.)  This assertion is belied by the record.  In its ████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████  (ER-297.)  Realtek

then requested that ██████████████████████████████████████████

███████████████████████████  *Id.*  Realtek's request does not

specifically ask LSI to ██████████████████████████████, as

Realtek now argues.

Fifth, Realtek argues that the June 20, 2012 proposal from LSI to Realtek

contains ████████████.  (Realtek Br. at 21-22.)  The reasonableness of

LSI's June 20, 2012 proposal has *not* been decided by the district court and there

has been no finding that any terms of the proposal are unreasonable.  The district

court's order from which this appeal stems only focuses on the *timing* of LSI's

proposal.  Realtek concedes as much in its Brief.  (Realtek Br. at 23 ("Although

Realtek also claims defendants' June 2012 proposal breached their RAND

obligations, it did not move for summary judgment on that ground").)  Therefore,

any such characterization by Realtek regarding the reasonableness of the terms of

the June 20, 2012 proposal reflects Realtek's opinion and contentions, and not

facts of record.

Sixth, while Realtek did produce a corporate witness to testify to 

(ER-76-77.)

Moreover, it is undisputed that expert discovery had not even begun when the district court entered its May 20, 2013 order granting summary judgment.  (ER-332.)  Hence, the statement that "[a]fter the parties took discovery, Realtek moved for partial summary judgment on its breach of contract claim" (Realtek Br. at 23) is seriously misleading.

Finally, it is true that the Administrative Law Judge ("ALJ") in the ITC proceeding rendered an "initial determination" ("ID") of non-infringement with respect to the two Wi-Fi patents at issue in this case, while rejecting all of Realtek's invalidity challenges and affirmative defenses, including the RAND defenses on which the district court granted summary judgment in favor of Realtek.  What Realtek did not mention is that the ALJ made extensive, detailed alternative findings of infringement by Realtek of all asserted claims of the '958

and '867 Patents if LSI's claim construction were adopted. The ITC is now reviewing the ID in its entirety.

## III.    ARGUMENT

### A.    Realtek Cannot Assert that the Injunction Is Proper *and* that this Court Lacks Jurisdiction.

Realtek devotes a significant portion of its brief arguing that this Court lacks jurisdiction to review the district court's preliminary injunction order. The cases cited by Realtek, however, confirm that the district court's injunction falls squarely within the requirements for interlocutory review.

Under 28 U.S.C. § 1292(a)(1), "the courts of appeals shall have jurisdiction of appeals from . . . Interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions . . . ." *See also Orange County v. Hongkong & Shanghai Banking Corp.*, 52 F.3d 821, 825 (9th Cir. 1995).

Initially, there is no doubt that the PI Order granted a preliminary injunction. The PI Order specifically states that the district court "GRANTS Realtek's motion for a preliminary injunction enjoining [LSI] from enforcing any exclusion order or injunctive relief by the ITC that [it] might obtain against Realtek with respect to the '958 and '867 declared standard essential patents." (ER-0014.) "The preliminary injunction shall remain in effect until this court determines [LSI's] RAND obligations and [LSI has] complied therewith." (*Id.*). At the conclusion of

6

the PI Order, styled as "ORDER," the district court repeats the statement issuing a preliminary injunction against LSI.  (ER-0014.)

The PI Order also satisfies the factors that this Court considers in determining whether an interlocutory order is appealable.  As characterized by Realtek, these factors are:

> (1) whether the order has the practical effect of entering or refusing to enter an injunction; (2) whether the order might have serious, perhaps irreparable consequences; and (3) whether an immediate appeal is the only way to effectively challenge the order.

(Realtek Br. at 30 (citing *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83 (1981).) Each factor is satisfied.

 "In determining whether an order has the practical effect of granting or denying an injunction, we evaluate the order in light of the essential attributes of an injunction."  *Orange County v. Hongkong & Shanghai Banking Corp.*, 52 F.3d 821, 825 (9th Cir. 1995).  These characteristics are whether the order is (1) directed to a party, (2) enforceable by contempt, and (3) designed to accord or protect some or all of the substantive relief sought by a complaint in more than preliminary fashion.  *See id.* at 825-26 (citations omitted).  The PI Order embodies each of these characteristics.

The PI Order is directed to a party, *i.e.* LSI.  If and when an exclusion order is entered by the ITC, LSI may face contempt should it act to enforce the exclusion

order.  No further act by the district court or any party is required to perfect the injunction upon issuance of the exclusion order from the ITC, and LSI *is enjoined* from acting to enforce any exclusion order.  In addition, the PI Order accords Realtek with substantive relief that it seeks in the district court action. Specifically, in its motion, Realtek stated that as ███████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████  (ER-0177.)  The PI Order affords Realtek precisely this relief: "The preliminary injunction shall remain in effect until this court determines defendant's RAND obligations and defendants have complied therewith."  (ER-0014.)  Therefore, the PI Order is both on its face and in substance an interlocutory order granting an injunction that LSI may appeal as of right.

Realtek asserts that the PI Order is not an injunction because it has no practical effect.  (Realtek Br. at 31.)  But Realtek's own arguments concerning its alleged "irreparable harm" belie this assertion.  Realtek alleges that the PI Order ameliorates the alleged "irreparable harm" caused by "the mere spectre of defendants obtaining affirmative relief from the ITC" by "giving Realtek something to show its customers."  (Realtek Br. at 36.)  Thus, the PI Order is creating the practical effect of weakening LSI's property rights and its position in the marketplace by, for example, signaling to other companies that LSI's patents

cannot and will not be fully enforced.  If the PI Order did not have this effect, it could not "ameliorate" Realtek's alleged harm.  The PI Order is a binding restraint on LSI's ability to enforce its property rights and thus has the practical effect of an injunction.

For similar reasons, the PI Order also has "serious, perhaps irreparable consequences" to LSI and can only be "effectively challenged only by immediate appeal."  *Pit River Tribe v. United States Forest Service*, 615 F.3d 1069, 1077-78 (9th Cir. 2010).  As long as the PI Order remains in place, LSI's property rights may be irreparably harmed through decreased enforceability.  Further, in preventing LSI from acting to enforce the exclusion order it is otherwise entitled to obtain, LSI will have been irreparably harmed in spending significant resources seeking such an order that it could not later act to enforce.  Finally, as the PI Order states that the injunction is in place, an immediate appeal is the only effective option available.  Immediate review is necessary to correct the harm presently being done to LSI's property rights.

Realtek asserts that certain case law supports its claim that no injunction exists.  On the contrary, the cases cited by Realtek are inapposite to the issues presented here because the injunctions at issue in those cases required specific actions *by the parties* to perfect the injunction, a requirement not found in the PI Order.  Realtek dismisses this critical distinction.  Because the effects of the

9

district court's PI Order are in control of a third party, rather than LSI or Realtek, LSI cannot avoid the force of the injunction by preventing certain conditions from being met. Thus, unlike the litigants in the cases cited by Realtek, LSI can only escape the injunction by appealing to this Court.

An examination of the cases on which Realtek relies reveals that this distinction renders them inapposite. In *Warehouse Restaurant, Inc. v. Customs House Restaurant, Inc.*, this Court found that because the district court held the matter "in abeyance, awaiting future events after which *either party may move to reopen the proceedings*," the district court's order was not final and thus could not be appealed. 726 F.2d 480, 481 (9th Cir. 1984) (emphasis added). Here, the parties have no control over the PI Order, and the district court has not held anything "in abeyance." In Realtek's own words, the injunction "would spring into effect" when the ITC issues the exclusion order. (Realtek Br. at 25.)

Similarly, a half century ago in *United States v. Associated Air Transport, Inc.*, the Fifth Circuit determined that an injunction was not in place (and thus not appealable) because certain conditions precedent in the injunction had not been satisfied *by the moving party*. *See* 256 F.2d 857, 861 (5th Cir. 1958) ("the District Court's order of Dec. 20, 1957, expressly stated that before its injunction" "may be considered effective * * * (the carriers) be required to post" "surety bonds").

Again, the PI Order requires no act *by any of the parties*.  Instead, the parties await the actions of the ITC, a government entity outside the parties' control.

In fact, Realtek cites a decision that reinforces LSI's position that the PI Order is appealed at this time.  In *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 491 (7th Cir. 2012), the court held that it had jurisdiction to review an order that was the "functional equivalent of an injunction" even if not all conditions for remedial relief had yet been met.  Similarly, the district court's PI Order commands that LSI not act to enforce an exclusion order issued by the ITC and is not contingent on whether the ITC issues an exclusion order.  Because the restriction imposed by the district court on LSI is in place, regardless of future events, the injunction is in place and LSI's appeal of the PI Order is proper.

Finally, contrary to Realtek's assertions, LSI does not assert that the erroneous nature of the PI Order renders the order appealable.  The PI Order satisfies all the requirements of an appealable order by placing a harmful, substantive restraint on LSI that can only be effectively reviewed through interlocutory appeal.  Ultimately, Realtek cannot take the position that the PI Order validly remedied an immediate, irreparable harm to Realtek and yet claim that it has no effect on LSI.  Realtek cannot have it both ways.  Either the PI Order addressed an immediate, irreparable harm and is appealable, or the PI Order is of

11

*no effect* and Realtek failed to identify any harm that could be remedied by the PI Order. Either way, the district court exceeded its authority in issuing the PI Order.

**B.    The District Court Erred in Granting the Preliminary Injunction.**

Realtek has done nothing to refute LSI's showing that the district court committed a litany of legal and factual errors in entering the PI Order. Realtek has satisfied none of the requirements for preliminary injunctive relief.

**1.    Realtek Cannot Show Likelihood of Success on the Merits.**

**(a)    The District Court Invented a *Per Se* Rule.**

The district court held that LSI's contractual obligations to the IEEE created a *per se* rule barring LSI from seeking injunctive relief for its standard-essential patents ("SEPs") without first making a licensing offer that *itself* satisfied RAND requirements. Realtek denies that the district court created such a rule, but the holding is indisputable from the plain text of the PI Order:

> Similar to the situation in *Motorola*, here, defendants' [sic] are contractually obligated under their Letters of Assurance to the IEEE to license the '958 and '867 patents on RAND terms and Realtek is a third-party beneficiary to that contract (this is not disputed). Also, like in *Motorola*, <u>the act of seeking injunctive relief</u> (here, at the ITC *before* proposing a RAND license to Realtek) <u>is inherently inconsistent and a breach of defendants' promise to license the patents on RAND terms</u>.

(ER-0009 (underlining added).)  The district court thus held that "the act of seeking injunctive relief" breached LSI's RAND commitment.  But neither the district court nor Realtek has pointed to a single provision in *any* contract to which LSI is a party under which LSI agreed to forego the right to injunctive relief.  The supposed contractual obligation underlying the district court's finding concerning likelihood of success of the merits simply does not exist.

Indeed, the only contractual obligation that Realtek identifies in its brief is that "defendants were contractually obligated to license the '958 and '867 patents on RAND terms and conditions."  (Realtek Br. at 38.)  Realtek does not even allege that any specific contractual term indicated an agreement by LSI to forego injunctive relief.  Because "the act of seeking injunctive relief" is what allegedly amounted to breach, Realtek's failure to identify a contractual obligation prohibiting this "act" is fatal to its case.

Realtek also seeks to escape the plain language of the PI Order by asserting that the PI Order did not bar all injunctive relief, but "was limited to 'the situation here, where defendants did not even attempt to offer a license, on 'RAND' terms or otherwise, until after seeking injunctive relief.'"  (Realtek Br. at 41 (quoting ER/11).)  But this is still an illusory *per se* rule that has no basis in any contract.  There is nothing inconsistent between LSI's RAND commitments and its right to seek injunctive relief against violations of its property rights.  As explained in

13

LSI's Opening Brief, LSI has abided and will continue to abide by its RAND commitments, and remains willing to negotiate a RAND license with Realtek. Realtek, in contrast, has flatly refused to enter into a license until it has exhausted its litigation defenses and appeal rights. (LSI Br. at 28-29.)

To the extent Realtek desires a RAND license, Realtek is leveraging the options available to it through litigation – the threat of a finding of noninfringement, invalidity, and/or unenforceability – to obtain a more favorable rate. LSI, too, is simply exercising its legal rights as the holder of a valid U.S. patent to enjoin the unauthorized use of its intellectual property. Realtek has a choice: it can cease using LSI's property without permission or it can obtain permission through a license. LSI's obligation to make a license available is not inconsistent with its right to seek injunctive relief. The two are separate elements of the "bundle of rights" afforded to every U.S. patent holder. A license is available, but Realtek does not want it. Instead, Realtek has chosen to infringe LSI's patents without compensation – for a decade – and this infringement is redressable by injunctive relief in the ITC.

There is clearly nothing in any written contract that indicates LSI surrendered or otherwise curtailed its right to injunctive relief. Instead, Realtek looks to the inapposite decisions in the *Microsoft* litigation to support the district court's *per se* rule. But these decisions do not stand for the proposition that the

14

holder of an SEP is barred from seeking injunctive relief for any reason. At best, Realtek cites *dicta* from this Court's decision noting that an "implicit" promise to forego injunctive relief is "arguably" inconsistent with a party's RAND commitments. (Realtek Br. at 41-42 (quoting *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 884-885 (9th Cir. 2012).) But this sentiment did not control the outcome in *Microsoft* and, as explained above, there is nothing inconsistent between injunctive relief and RAND obligations.

Realtek also misrepresents the subsequent district court decision in *Microsoft*. Realtek asserts that "[o]n remand, the district court ruled that any form of injunctive relief that Motorola sought was improper." (Realtek Br. at 42.) But Realtek omits the critical fact that the district court made this determination only after Microsoft "*committed to accept a license on RAND terms.*" *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2012 WL 5993202, at **5, 6 (W.D. Wash. Nov. 30, 2012) (emphasis added). Thus, injunctive relief was unavailable because it was an established fact that the infringer would accept a RAND license. Here, Realtek has made no such commitment and in fact has rejected *any* license until it exhausts its litigation options. Further, even where the infringer agrees to accept a RAND license the district court in *Microsoft* acknowledged that injunctive relief could still be available if circumstances changed in the future. *Id.* at *7.

Realtek cannot avail itself of the facts in *Microsoft* because Realtek's own recalcitrance makes injunctive relief necessary. Under the district court's holding below, an infringer could refuse to accept a RAND license and freely infringe an SEP without compensation to the patent holder, leaving the patent holder with no legal remedies to defend its property rights. This is not what LSI, or any SEP holder, agrees to in undertaking a RAND obligation.

Thus, while Realtek accuses LSI of comparing "apples to oranges" in distinguishing the *Microsoft* case (Realtek Br. at 43), it is Realtek who ignores key distinctions in seeking support for the district court's invalid *per se* restriction on injunctive remedies. These distinctions are similarly critical in evaluating the additional cases Realtek cites in support of the "simple principle" that "RAND obligations require patent owners to give a prospective licensee a good faith licensing proposal *before* attempting in the ITC to exclude that license from importing into the United States." (Realtek Br. at 44.) As an initial matter, this "simple principle" appears nowhere in any contract, statute, rule, or binding court precedent. Other courts have expressly rejected such a rule. *See, e.g.*, *Apple, Inc. v. Motorola Mobility, Inc.*, Case No. 11-cv-178, 2012 WL 5416941, at \*15 (W.D. Wisc. Oct. 29, 2012) (holding that seeking an injunction did not breach RAND commitments where no language prohibiting injunctive relief appeared in the contracts). Further, each case in which injunctive relief has been curtailed in light

16

of RAND obligations recognizes that *injunctive relief may be available if an infringer refuses to accept a license*. (*See* LSI Br. at 23-24.) Realtek has refused to accept a license and thus the district court erred in finding that seeking injunctive relief is a *per se* breach of LSI's RAND obligations.

Realtek also relies on "sound policy concerns . . . that a patentee who seeks injunctive relief gains an unfair advantage that runs contrary to its RAND commitments." (Realtek Br. at 44.) But these "policy concerns," to the extent they are valid, have no bearing on this case. What matters in assessing the propriety of the district court's order are the specific contractual obligations that govern LSI's conduct and the specific facts of this case. As explained above, there is no contractual obligation that supports the relief Realtek obtained below.

Furthermore, LSI explained in its Opening Brief that the speculative concerns of a few public officials do not support the limitation on injunctive relief that the district court implemented here. (LSI Br. at 26-30.) Indeed, it is Realtek, not LSI, who seeks an unfair advantage by refusing to take a license even as LSI's legal rights to enforce its patents are restrained. If "policy concerns" were to decide this case, the chief concern is not "patent hold up," but rather the district court's legally unsupportable encouragement of "patent hold out" by an unscrupulous infringer.

17

**(b)    The District Court Improperly Resolved Factual Disputes in Realtek's Favor.**

The district court invented a *per se* rule and then held that LSI violated that rule by resolving factual disputes in Realtek's favor and ignoring undisputed facts. Realtek has not refuted LSI's showing in this regard.

First, Realtek seeks to escape its admission that LSI's 2002/2003 communications amounted to a license offer for at least the '958 Patent. (Realtek Br. at 48.) But while Realtek now disputes the scope of that offer, Realtek cannot honestly deny that an offer was made. Further, the 802.11b standard, which Realtek admits was the subject of the 2002/2003 offer, is in fact at issue in the ITC Investigation, contrary to district court's findings. (See, e.g., ER-0270, ITC Complaint at 34 ("the Accused Wi-Fi Products incorporating Wi-Fi Component Suppliers' 802.11b/g-compliant Wi-Fi chips all incorporate claimed features of the van Nee '958 patent central to the practice of the 802.11b/g standards.") Thus, at the very least, the PI Order was overbroad in barring *any* injunctive relief from the ITC.

In addition, the district court's analysis as to why LSI "had not offered a RAND license," while mistaken in each instance, is irrelevant. The district court held (improperly) that an SEP holder must make a license offer prior to seeking an injunction. There is no basis for this holding, let alone the proposition that an SEP holder's opening offer itself must amount to RAND terms. Realtek's attempt to

18

support the district court's factual findings just drags the district court's legal framework farther afield from the law.

Second, the district court ignored Realtek's unreasonable position concerning its willingness to take a license, instead finding as a factual matter that Realtek is a willing licensee. As discussed above and in LSI's Opening Brief, Realtek refused to meaningfully negotiate in 2002/2003. Realtek asserts that it did negotiate at this time, but acknowledges that "the parties ceased communication" after *Agere* "inquired as to the status" of the discussions. (Realtek Br. at 51.) Thus, it was Realtek, not LSI, who cut off communications in 2002/2003. At the very least, this was a factual issue that the district court improperly resolved in the context of summary judgment.

Realtek's position that ████████████████████████████████ ████████████████████████ is tantamount to outright refusal to take a license, consistent with its stonewalling in 2002/2003. Realtek seeks a RAND determination from the district court and a determination of noninfringement, invalidity, and unenforceability from the ITC. This is not the behavior of a "willing licensee." It is the behavior of an infringer choosing to continue its infringement and "roll the dice" in court rather than compensate a patent holder for infringement. As discussed above, the legal right of injunctive relief is necessary to remedy this type of "patent hold out" behavior by a recalcitrant infringer.

19

### (c)    The District Court Improperly Ruled Before Key Discovery Was Completed And Made of Record.

The discovery missing from the record at the time of Realtek's motion was essential, as set forth in LSI's Opening Brief.  Moreover, both the district court and Realtek incorrectly characterize LSI's outstanding discovery as being relevant only to the question of the RAND rate.  (Realtek Br. at 55-56.)  This is incorrect.  ███

███████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████  (Realtek Br. at 55.)  For example, Realtek's

witnesses ███████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

(ER-0077-78.)  Given the fact-intensive nature of Realtek's allegations concerning the reasonableness of LSI's offers, including whether the 2002/2003 correspondence discharged LSI's RAND obligations, discovery on all of these topics was needed before LSI could fully respond to Realtek's Motion.  Finally, at the time of the motion, expert discovery had not even started.  (ER-0017.)  By

filing its motion prematurely, Realtek prevented LSI's experts from offering opinions that would have assisted the jury (and the district court) in determining what is normal or typical in licensing of Wi-Fi patents that are considered standard essential. This is particularly true given that the IEEE indisputably provides no guidance in such matters, other than the general requirement of "reasonable and non-discriminatory" licensing.

Realtek further improperly contends that LSI "delayed" in seeking the discovery covered by its Rule 56(d) request. (Realtek Br. at 57.) It is undisputed that discovery in this action closed on May 1, 2013, expert discovery closed on August 1, 2013 and the last day for motions for summary judgment was August 2, 2013. (ER-0332; ER-0017.) Thus, LSI's service of deposition notices on February 26, 2013, with two months left in fact discovery, does not represent any untoward delay by LSI. The only reason that Realtek can even allege any delay by LSI is that Realtek filed its motion for summary judgment on March 26, 2013, in the middle of discovery with a month left in the schedule before fact discovery was scheduled to close. Moreover, at the time of the motion, LSI and Realtek had engaged in extensive correspondence regarding the ██████████████

████████████████████████████████████████

████████████████████████████████████████

██████████ (ER-0075-77, ¶¶ 10-20; *see also* SER-050-54.) Therefore, it is inaccurate

and unfair for Realtek now to accuse LSI of delay in seeking discovery, when no such delay exists in the record.

### 2. Realtek's Claim of Irreparable Harm Was Untimely and Not Legally Cognizable.

#### (a) Realtek Waited Too Long to Seek Injunctive Relief.

Realtek cannot legitimately deny that it waited an unreasonably long time before bringing its motion. Realtek asserts that it "brought its motion as one for partial summary judgment well before the deadline for dispositive motions and after conducting the discovery needed to establish the absence of any triable factual issue." (Realtek Br. at 58.) This, however, is not the standard for timeliness as to *injunctive* relief, which is what the district court granted. Rather, a motion for preliminary injunction must be brought promptly in order to preserve a showing of irreparable harm. This Court has found that a delay of seven months is unreasonable, and thus Realtek's nine-month delay completely defeats any showing of irreparable harm. *See International Ass'n of Plumbing & Mechanical Officials v. Int'l Conference of Building Officials*, 79 F.3d 1153, 1996 WL 117447 (9th Cir. 1996) (Unpublished Table Decision).

Realtek's excuses for its delay ring hollow. First, Realtek asserts that it needed time to develop the factual record to support its claim for injunctive relief. (Realtek Br. at 58.) However, Realtek cites no authority for the need to take

depositions and engage in discovery before *seeking* a preliminary injunction.[3]
Indeed, the purpose of a preliminary injunction is to address an *immediate* threat of
irreparable harm.  Thus, the asserted need to confirm facts before seeking an
injunction suggests that there is no immediate threat of harm and injunctive relief
is not available.  Further, while Realtek apparently had all the time and discovery
necessary to make its claim for relief, LSI was not allowed sufficient discovery to
respond, as discussed above and in LSI's Opening Brief.

Realtek also blames ████████████████████████████████
██████████.[4]  (Realtek Br. at 58.)  But to the extent ████████████ can form
the basis for "irreparable harm," the danger to ████████████████
was clear from the outset of the ITC Investigation.  Realtek knew that it was facing
an exclusion order, just as every ITC respondent does.  Realtek could have
foreseen that its ████████████████ and thus should have promptly
sought injunctive relief.  The fact that Realtek did not, and that ████████████
████████████ apparently forms the entirety of Realtek's case for "irreparable
harm," confirm that the district court erred in finding that Realtek faced a
significant threat of irreparable harm.

---

[3] The district court erred by resolving several key disputed facts in Realtek's favor
in *granting* the injunction because its "likelihood of success" analysis was
premised entirely on an improper summary judgment ruling.
[4] Contrary to Realtek's assertion, LSI has repeatedly challenged the probative
value of these ████████████████.

Finally, Realtek seeks to obfuscate the brazen gamesmanship of filing a preliminary injunction and summary judgment motion on the eve of the ITC trial by asserting that it "filed its motion when the threat of irreparable harm was most imminent," and asserts that this prejudice to LSI was LSI's own fault for filing the ITC complaint in the first place. (Realtek Br. at 59.) These arguments are absurd. Realtek admits that it waited until the last minute (when the threat was "most imminent"), and blames LSI for taking a legal action that it had every right to take. Plain and simple, Realtek timed its motion to hamstring LSI's effort to prosecute the ITC Investigation and further disadvantage LSI in its efforts to enforce its property rights.

In sum, Realtek's unreasonable delay in seeking injunctive relief defeats the showing of irreparable harm necessary to obtain such relief. Realtek's showing of likelihood of success on the merits – which is negligible as discussed above and in LSI's Opening Brief – cannot overcome this failure to show irreparable harm. The bare "threshold" has not been met. (*See* Realtek Br. at 60 (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th. Cir. 2011).) Even if Realtek could demonstrate a likelihood of success on the merits (and it cannot), Realtek's failure to demonstrate irreparable harm is an independent basis to vacate the PI Order. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("*Winter* tells us

24

that plaintiffs may not obtain a preliminary injunction unless they can show that irreparable harm is likely to result in the absence of the injunction.").

> **(b)** **The Only "Harm" Identified by Realtek Is Purely Economic and Thus Not Irreparable as a Matter of Law.**

Realtek has also failed to identify any harm that the law recognizes as irreparable. Realtek denies that the harm it identified is "revenue loss," and yet asserts that the threatened harm is that ███████████████████████ ███████████████████████████████████ (Realtek Br. at 60.) ███████████████████████████████████ ███████████████████████. This harm is by definition not "irreparable" under well-settled law. (LSI Br. at 33-34.)

While Realtek seeks to exaggerate its alleged harm by asserting that it faces ███████████████████████████████████

███████████ (Realtek Br. at 61), this argument fails. First, ███████████ is tantamount to "loss of revenue" and is thus not irreparable. *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("It is true that economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award.").

Second, Realtek has provided absolutely no evidence of ███████████████ ███████████████████████████████████



(Realtek Br. at 60.)

Finally, the district court ignored the speculative nature of Realtek's evidence and afforded it undue weight. LSI was not required to submit "contradictory evidence" or make a formal objection in order to challenge the value of Realtek's ███████████████. LSI pointed out to the district court, as it did in its Opening Brief before this Court, that the minimal evidence of speculative *economic* harm cannot support injunctive relief as a matter of law.[5]

Accordingly, the district court erred in finding that Realtek demonstrated irreparable harm.

### 3. The Balance of Equities and Public Interest Fail to Support Injunctive Relief.

Realtek has failed to demonstrate that the district court's holdings concerning the balance of equities and the public interest were correct. As discussed above and in LSI's Opening Brief, Realtek's ████████████

---

[5] ████████████████████████████

███████ does not support injunctive relief.  Further, Realtek's "disadvantaged position" is purely of its own making, and the district court's unjustified limitation on LSI's property rights places LSI in a disadvantaged position.  Contrary to Realtek's assertion, there is nothing "*inherently unfair*" (Realtek Br. at 62 (emphasis in original)) about LSI protecting its property rights while executing its contractual duties.

Realtek's arguments make clear that the preliminary injunction in fact harms LSI.  Realtek asserts that the PI Order will force LSI to "offer[] Realtek a license on RAND terms instead of under present threat of an exclusion order."  (Realtek Br. at 63.)  But as explained above, there is no connection between RAND commitments and injunctive relief.  Realtek is not entitled to negotiate with LSI with LSI's property rights curtailed by an injunction.  Rather, LSI is entitled to have the full force of its patents in effect as it negotiates with Realtek.  By inhibiting the enforceability of LSI's patents, the PI Order unfairly prejudices LSI by reducing its bargaining power.

The *status quo* concerning U.S. patents for decades has been that patent holders and alleged infringers negotiate with the understanding that injunctive relief against infringement will be available if the patents are infringed without compensation.  No RAND commitments change that fact.  No contract between LSI and any party manifests an agreement by LSI to forego any portion of the

bundle of rights afforded by a U.S. patent in exchange for standard essentiality. On the contrary, LSI is committed to offer RAND rates to all willing licensees, but LSI and every other player in the industry understand that should an infringer prove unwilling to enter into a license (as Realtek is here), the patent is nonetheless fully enforceable as a property right. By stripping LSI of this right the district court placed LSI in an unfair bargaining position with no basis in fact or law.

Further, Realtek is incorrect in downplaying the effect of the PI Order on LSI's broader business. The PI Order signals to any company that may be practicing LSI's SEPs that the SEPs are not fully enforceable. Realtek's argument that the PI Order only applies to Realtek is overly simplistic. The district court held that LSI's agreement with the *IEEE*, not with Realtek, categorically bars LSI from seeking *any* injunctive relief without first engaging in certain steps that are not found in any contract. Any other party reading the PI Order would expect the same result should LSI seek to enforce its patents against that party. The PI Order significantly prejudices LSI by weakening its intellectual property rights and preventing full compensation for infringement by others.

Finally, the district court's finding concerning the public interest was based on the same faulty "policy concerns" that Realtek recites in its brief, none of which have any relation to the facts of this case. Nor do these "policy concerns" have any bearing on statutory law, regulations, or binding court precedent. The terms of the

contract, basic contract law, and decades of settled patent law control this dispute, and point to only one conclusion, namely, that LSI has breached *no* contractual commitments and its property rights – and all intellectual property rights – should be given full effect by U.S. courts.

## IV.    CONCLUSION

Realtek cannot meet any of the requirements for injunctive relief, and the district court erred in entering the PI Order.  Because the PI Order is an injunction with immediate, harmful effects on LSI, this Court should assert jurisdiction and VACATE the PI Order.

LSI requests oral argument.

DATED:  November 12, 2013          Respectfully submitted,

KILPATRICK TOWNSEND &
STOCKTON LLP


By:    *s/ David E. Sipiora*
          DAVID E. SIPIORA
          MATTHEW C. HOLOHAN

Attorneys for DEFENDANTS-
APPELLANTS LSI Corporation and
Agere Systems LLC

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  This brief uses a proportional typeface and 14-point font, and contains 6,852 words.

DATED:  November 12, 2013      Respectfully submitted,

KILPATRICK TOWNSEND &
STOCKTON LLP

By:    *s/ David E. Sipiora*
      DAVID E. SIPIORA
      MATTHEW C. HOLOHAN

Attorneys for DEFENDANTS-
APPELLANTS LSI Corporation and
Agere Systems LLC

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


s/      Kirstin Largent